**LAST CHANCE MINING CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 403–85L.

United States Claims Court.

June 26, 1987.

Clement Theodore Cooper, Washington, D.C., for plaintiff; Gregory J. Chacas, Ely, Nev., of counsel.

Gerald S. Fish, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This action is currently before the court on plaintiff's motion for summary judgment and defendant's motion for judgment on the pleadings. After consideration of the parties' written submissions [1] and oral argument, for reasons set forth herein, the court concludes that plaintiff has failed to state a claim upon which relief can be granted.

### BACKGROUND [2]

Prior to December 1979, Last Chance Mining Company ("Last Chance") owned a

---

1. The parties were given the opportunity to make certain additional submissions after oral argument. Defendant's submission of June 15, 1987 was responsive to the court's order of June 3, 1987, and thus plaintiff's Motion to Strike Defendant's Response is denied.

2. For purposes of resolving both these motions, the facts recited in plaintiff's complaint, as amended, will be taken as correct.

fifty percent interest in unpatented lode mining claims known as Pioneer # 1 through # 22. Alaska Pacific, Inc. owned the remaining interest. The claims are situated in the Bald Mountain area of White Pine County, Nevada. The claims were originally located in 1940 pursuant to the Mineral Location Act of 1872, 30 U.S.C. §§ 22 *et seq.* (1982).[3]

In 1976, Congress enacted the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1782 (1982) ("FLPMA"). Section 314 of the act creates a federal recording system designed to clear up uncertainty surrounding many mining claims. 43 U.S.C. § 1744. Under the recording system, a notice or certificate of location of the claim must first be filed with and recorded by the Bureau of Lands Management ("BLM") within three years of the statute's enactment, that is on or before October 22, 1979. Also, in the year of the initial recording, and prior to December 31 of every year thereafter, the claimant must file with state officials and with BLM either a notice of intention to hold the claim, an affidavit of assessment of work performed on the claim, or a detailed reporting form. 43 U.S.C. § 1744(a). Section 314(c) states that failure to comply with the requirement "shall be deemed conclusively to constitute an abandonment of the mining claim ... by the owner." 43 U.S.C. § 1744(c). The constitutionality of this section and its implementing regulations was upheld in *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985).

Last Chance alleges that on October 17, 1979, it complied with the statutory requirement by sending the following documents by certified mail to BLM: (a) a statement of ownership; (b) a plot or map delineating the claims; and (c) a supplemental claim map of the Pioneer claims, Copper Basic Area in Bald Mountain. The map bore a stamp evidencing filing with the White Pine County, Nevada Recorder's Office on September 23, 1976. Defendant contends that it did not receive these materials prior to October 22, 1979.

To support its claim that it sent these materials to BLM on October 17, 1979 and that BLM received the notice of claim prior to October 22, 1986, plaintiff submitted a receipt showing a certified mailing to BLM with a postmark of October 17, 1979. Plaintiff does not have a return receipt, however. Additionally, the court allowed to be filed during oral argument the affidavit of Romolo DiCianno, Postmaster of the U.S. Post Office at Reno, Nevada, in which he testifies that plaintiff had mailed a package to BLM by certified mail and that the package was hand delivered to BLM by the post office prior to October 22, 1979. Moreover, as further circumstantial support of timely filing, plaintiff points to a note to him from BLM dated November 15, 1979, indicating that it was returning the 1978 Proof of Labor forms submitted to the office since those forms were not needed "at this time."

Last Chance alleges that on November 15, 1979, a company identified as Placer-Amex, Inc. ("Placer") "top filed" plaintiff's claims and "jumped" the area, presumably ousting Last Chance of any interest. Soon after, Placer began mining the claims, and eventually constructed a plant costing approximately $12 million and employing 20 workers. It has subsequently extracted large amounts of ore.

On December 13, 1983, defendant sent the following letter to plaintiff:

This is in reference to your unpatented mining claim(s) listed below.

Pioneer, Pioneer # 1–22     N   MC 291839–291861

Section 314 of the Federal Land Policy and Management Act of 1976 requires

---

**3.** The Mineral Location Act allows United States citizens to go onto unappropriated public land to prospect for and develop certain minerals. "Discovery" of a mineral deposit, followed by procedures to formally "locate" the deposit, gives an individual the right of exclusive possession of the land for mining purposes. 30 U.S.C. § 26. After certain statutory conditions are ful-

filled, an individual may patent the claim and purchase from the government the land and minerals and obtain title to them. Patenting is not required, however, and an unpatented mining claim remains a recognized possessory interest. *United States. v. Locke,* 471 U.S. 84, 86, 105 S.Ct. 1785, 1788, 85 L.Ed.2d 64 (1985).

that an owner of an unpatented mining claim must record their claims with the Bureau of Land Management. To meet this requirement, you must submit the following items to this office.

A one-time service fee of $5.00 per claim which is not returnable.

A copy of the Notice or Certificate of Location per claim, which has been filed or will be filed with the County.

Since your service fees are short by $115.00 it will be necessary for you to forward that amount to us within 30 days upon receipt of this notice along with the copies of your certificates of location. Failure to submit the proper fee and certificates shall cause the recordation to be rejected and returned to the owner.

Also, since these claims were located in 1940, in order to have properly recorded claims, you will need to send us copies of your 1979, 1982, and 1983 proofs of labor. Please submit these documents along with your service fees and certificates.

Plaintiff argues that this letter constitutes a recognition of the timely filing prior to October 22, 1979. Defendant contends that it reflects materials received after that date.

Although it does not appear in the pleadings or submissions, counsel for Last Chance represented in court during oral argument that plaintiff's President had several contacts in person or by telephone with BLM officials before and after the December 13 letter. Plaintiff undertook no formal appeal or challenge of the apparently unfavorable result of those contacts. Other than the submissions and pleadings in this action, the only official statement by BLM rejecting Last Chance's assertion appears in affidavits filed by defendant in litigation brought in state court by the former co-owner, Alaska-Pacific. In any event, on May 8, 1985, Last Chance and others quitclaimed to Placer whatever rights they had in the unpatented mining claims at issue.

A complaint was filed in this court on July 8, 1985, seeking $50,000,000.00. Last Chance alleges that by not properly recording documents timely submitted in compliance with FLPMA, defendant extinguished its claims and is thus liable for their value. Last Chance's motion for summary judgment is predicated on three independent legal theories: first, the Secretary of Interior held Last Chance's possessory interest in constructive trust and by failing to properly record plaintiff's claims the Secretary and his agents violated their fiduciary obligations under the trust; second, that FLPMA and its implementing regulations created an implied-in-fact contract which was breached by defendant's failure to properly file Last Chance's claim; third, the failure to record plaintiff's claim constituted a taking in violation of the fifth amendment to the Constitution.

In opposition to plaintiff's motion for summary judgment, defendant has filed the declaration of Pamela Reynolds, former Supervisory Conveyance Examiner, Mining Claim Recordation Section, BLM, for the purpose of challenging Last Chance's assertion that BLM received the necessary filing in a timely fashion. Moreover, in its own motion for judgment on the pleadings defendant contends that even assuming Last Chance possessed a mining claim and timely submitted materials which BLM failed to properly record, plaintiff has not stated a cause of action. Because the court agrees with the latter analysis, it is not necessary to determine if a conflict of material fact exists as to whether plaintiff's materials were properly submitted and received.

## DISCUSSION

### The Breach of Trust Claim

Last Chance argues that a trust exists in which the Secretary of Interior acts as trustee of public lands for the benefit of all unpatented mining claimants. This trust allegedly imposes specific duties and obligations upon the Secretary which were violated by BLM's failure to record the certificate of location, failure to timely notify plaintiff that location certificates had been presented for filing by Placer, and by collusion between BLM and officials of Placer.

As a result of the asserted violation of defendant's fiduciary duty, Last Chance argues that its claims were extinguished.

To invoke the jurisdiction of this court under 28 U.S.C. § 1491 a claimant must demonstrate a substantive right to money damages from the United States based on "the Constitution, or an Act of Congress, or any regulation of an executive department." *See United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). To accomplish this, "the claimant must demonstrate that the source of substantive law relied upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained,'" *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). The jurisdiction afforded by section 1491 is limited to "actual, presently due money damages from the United States;" it does not, in general, include equitable relief. *Testan*, 424 U.S. at 397–98, 96 S.Ct. at 953. The initial difficulty thus faced by Last Chance is that a suit based on a trust obligation sounds in equity. *Blankenship v. Boyle*, 329 F.Supp. 1089, 1112 (D.D.C.1971); Scott, The Law of Trusts § 2.7 (3d ed. 1967).

In any event, Last Chance is unable to point to any act or regulation which can be construed as creating a trust relationship between it and the United States, much less one which is justiciable in this court. Last Chance correctly points out that the Secretary of the Interior, as a representative of the Government, holds all public lands in trust, and that he is obliged to see that no public land is wasted or disposed of to a party not entitled to it. *Knight v. U.S. Land Assoc.*, 142 U.S. 161, 181, 12 S.Ct. 258, 263, 25 L.Ed. 974 (1891). However, he holds that position of trust, not for the benefit of any given individual, but "for all the people." *United States v. California*, 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889 (1947). Last Chance is unable to cite any decision suggesting that mineral claimants are the specific beneficiaries of a general trust relationship with the Government.[4]

█ The statute and supporting regulations which Last Chance relies on, specifically the Mineral Location Act of 1872 and the FLPMA, cannot reasonably be construed to create a trust relationship between mining claimants and the United States Government. Plaintiff's attempt to state a claim on this basis thus fails.

*The Contract Claim*

The statute and regulations in issue clearly do not grant a right to monetary relief against the United States. Nevertheless, Last Chance argues that the "plethora of rules, regulations and statutes involving federal mining law" form an implied contract between the Government and it. Plaintiff points first to 30 U.S.C. § 22. That section, however, merely declares that mineral deposits on federal lands are open to exploration and purchase. Last Chance argues that this provision constitutes an offer which was accepted when it entered onto the land, although it does not specify what the terms of the Government's offer were. Last Chance sees its acceptance and the consideration flowing from it as the actions involved in entry, discovery and location, and in the payment of fees. Additional terms of the contract are found in FLPMA and its implementing regulations, which as discussed above, place upon claimants certain filing requirements. Implicit in these obligations upon claimants, Last

---

4. Last Chance's reliance on cases concerning claims brought by Indian tribes is totally misplaced. This court is specifically given jurisdiction over such claims by 28 U.S.C. § 1505, which states in part:

The United States Claims Court shall have jurisdiction of any claim against the United States ... in favor of any tribe ... whenever such claim is one arising under the Constitution, laws or treaties of the United States....

The existence of a special trust relationship between the United States and Indian people is well established by statute and case law recognizing a right to sue for damages for breach of trust in this court. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 225, 103 S.Ct. 2961, 2972, 77 L.Ed.2d 580 (1983); 25 U.S.C. § 348 (1982).

Chance sees a duty on the part of BLM to file properly submitted materials.

Before declaring these ingredients a contract, plaintiff adds three board of contract appeals decisions, *Sogge Construction Co.*, IBCA No. 286, 62 BCA ¶ 3594 (1962); *Kenneth Holt*, IBCA No. 279, 61–1 BCA ¶ 3060 (1961); and *Knox Constr. Co.*, No. 38, slip op. (IBCA Dec. 12, 1955). Last Chance cites these cases for the proposition that a contractor is entitled to damages for delay. These decisions are of no utility for plaintiff's purposes, however. They are predicated upon an indisputable contractual relationship based on a written agreement between a plaintiff and the Government. They thus relate to delay only in that context. They do not stand for the proposition that an alleged failure to record a document constitutes a breach of contract in the absence of an underlying agreement.

■ Nothing in Last Chance's analysis fulfills the requirements necessary to show a contractual relationship between the parties. An implied-in-fact contract requires a showing of the same contractual elements as an express contract. Mutuality of intent and lack of ambiguity in offer and acceptance must be established. *Fincke v. United States*, 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982); *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 674, 428 F.2d 1241, 1255 (1970). The statutes and regulations here in question do not purport, even by implication, to constitute an offer. While in the broadest sense, the FLPMA is an "offer" to allow proof of claims, it is certainly not an offer to *contract*. It is more accurately characterized as a unilateral ultimatum on the part of the Government. It would do violence to traditional contract theory, not to mention the operation of government, to hold that any statute requiring some action by a citizen to obtain a benefit or protect a right constituted an open offer to contract.[5] The court concludes that Last Chance does not state

facts upon which a contract can be predicated.

*The Taking Claim*

It is difficult to be precise in describing the *sine qua non* of a governmental taking. The Court has referred to these determinations as "essentially ad hoc." *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1969). Although physical invasion and physical restraint are not necessary, *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed.Cir.1983), the Supreme Court has said that a "taking" may be more readily found when the interference with property can be characterized as a physical invasion by the government. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Numerous commentators have reflected the diversity of opinion and the apparent lack of cohesiveness in this body of law. Van Alstyne, *Taking or Damaging by Police Power: the Search for Diverse Condemnation Criteria*, 44 S.Cal.L.Rev. 1 (1971); Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv.L.Rev. 1165 (1967); Sax, *Takings and the Police Power*, 74 Yale L.J. 36 (1964).

■ Plaintiff cites no precedent, however, for the proposition that the inaction of a regulatory body in carrying out its statutory duty under circumstances similar to those alleged here has ever been held to be a taking. After considering the authorities cited by plaintiff and numerous others, the court concludes that the fifth amendment prohibition on taking private property "for public use without just compensation" is not implicated here. The one common denominator in cases finding a taking is that there was a public purpose animating some affirmative action or statement, whether that purpose finds expression, for example, in a regulation for health and safety, a physical entry, a confiscation, or a land use restriction[6]. This requirement is

---

**5.** The circumstances here are not like those addressed in *Nutt v. United States*, 12 Cl.Ct. 345 (1987), where there was an allegation that regu-

latory obligations were incorporated by reference in a written contract.

**6.** *See, e.g., First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, —

no more than a reflection of the fifth amendment itself, which is predicated on a taking *"for public use."*

Plainly here there has been no "actual invasion or taking," no direct appropriation or destruction, no "direct interference with or disturbance of property rights." *R.J. Widen Co. v. United States*, 174 Ct.Cl. 1020, 1027–28, 357 F.2d 988 (1966). Assuming Last Chance is correct, the extremely unfortunate result is more closely akin to the incidental or indirect consequences of governmental actions which the court in *R.J. Widen Co.* characterized as not constituting takings.

Moreover, while regulatory action clearly can constitute a taking, *First English Evangelical Lutheran Church v. County of Los Angeles*, — U.S. —, 107 S.Ct. 2378, 95 L.Ed.2d 250 (1987); *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124–28, 98 S.Ct. 2646, 2659–61, 57 L.Ed.2d 631 (1978); *Deltona Corp. v. United States*, 228 Ct.Cl. 476, 486, 657 F.2d 1184, 1190 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982), Last Chance specifically disavows any complaint as to the operation of the statute or its implementing regulations. Rather, it is the inadvertence or neglect of one or more BLM employees of which Last Chance complains. Its legal theory is simply a mismatch in light of the allegations. At best, assuming the allegation to be true, defendant's employees negligently failed to process plaintiff's claim. Clearly there is no "public use" resulting from negligence or malfeasance in the conduct of the regulatory scheme. While the public benefits from the overall effect of the forfeiture

statute, the statute is not the basis of plaintiff's claim.[7]

The facts here are similar to those considered by the Court of Claims in *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967). In that case, the plaintiff purchased a former German merchant vessel made available for sale by the Government as part of German war reparations. Plaintiff was unsatisfied with the ship and wanted to make a sale to a foreign purchaser, which required approval by the Maritime Commission. The Commission neglected to act in a timely fashion on plaintiff's request and the sale was lost. One of plaintiff's theories of liability was that the Government deliberately withheld approval and that this constituted a taking. The court rejected this argument, writing that

there was no taking requiring compensation under the Fifth Amendment. Neither the plaintiff's ship nor its contract with the Danish buyer was appropriated. *Omnia Commercial Co. v. United States*, 261 U.S. 501 [43 S.Ct. 437, 67 L.Ed. 773] (1923). The Commission's role was simply part of a pre-existing regulatory process known to plaintiff from the time it purchased the *Eastport*, and the Commission's failure to give its approval within the necessary time took no property from plaintiff any more than a comparable failure by the Federal Trade Commission, the Securities and Exchange Commission, or the Federal Power Commission, in their administrative processes, would amount to a taking.

178 Ct.Cl. at 612, 372 F.2d at 1011. The court concludes that the facts pleaded by plaintiff do not dictate a result different

U.S. —, 107 S.Ct. 2378, 95 L.Ed.2d 250 (1987) (ordinance prohibiting construction or reconstruction of building in an interim flood protection area may constitute temporary taking); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (statute required public disclosure of all health, safety and environmental data even if disclosure involved trade secrets); *Loretto v. Teleprompter Manhattan CATV and Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (statute provided that landlord had to permit cable television company to install facilities upon his property); *United States v. Causby*, 328 U.S. 256, 66 S.Ct.

1062, 90 L.Ed. 1206 (1946) (flights of aircraft over private lands were physical invasion); and *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928) (zoning ordinance).

7. This is not to suggest that a negligent act can never constitute a taking. A direct invasion of property might result from negligent operation of a bulldozer, for example. Here, however, the alleged results of inaction were neither intended nor a direct appropriation, confiscation, or invasion.

from that in *Eastport.* The government action or inaction here did not constitute a compensable taking within the meaning of the fifth amendment.

*Other Considerations*

The court has reviewed and rejected the three asserted bases for relief and found that even under the facts alleged, Last Chance cannot prevail. While during oral argument plaintiff's counsel declined any suggestion that the case might be transferable to district court, the court adds the following observations. Initially, the court notes that if Last Chance were appealing a final administrative decision by the Department of Interior rejecting its mineral rights claims, this court would not have the authority to "look behind, ... reexamine ... [or] ignore it." *Aulston v. United States,* 11 Cl.Ct. 58, 60 (1986); *see also Freese v. United States,* 221 Ct.Cl. 963 (1979); *Patterson v. United States,* 115 Ct.Cl. 348 (1950); *Dawson v. United States,* 113 Ct.Cl. 82, 81 F.Supp. 1021 (1949). This court does not have authority to grant money damages based on an unwarranted or unjustified decision holding a mining claim invalid. *Dawson v. United States,* 113 Ct.Cl., 82, 84, 81 F.Supp. 1021, 1002 (1949). As the court in *Freese* stated:

> This court does not lack general jurisdiction to determine whether a mining claim was taken by the Government without the payment of just compensation. Thus, we have general jurisdiction over all the essential elements of plaintiff's claim. We do not, however, have the particular power to overturn the Interior Department's conclusion that 26 of the mining lode claims allegedly owned by plaintiff and all of the millsite claims do not qualify as "claims" under 30 U.S.C. § 22 *et seq.* (1976), nor can we ignore such an administrative conclusion. Congress has chosen to place authority to review these decisions of the Secretary of the Interior in the United States District Courts.

221 Ct.Cl. at 964–65.

More recently in *Florida Rock Industries, Inc. v. United States,* 791 F.2d 893 (Fed.Cir.1986), the plaintiff challenged the denial of a permit to mine limestone by plaintiff. The rationale behind denying the permit by the Army district engineer was that the proposed method of limestone mining was a potential source of pollution. At the trial level, the trial judge reviewed the evidence and found that the proposed mining would not pollute and that the district engineer's decision to deny the permit was wrongful and constituted a taking. On appeal the Federal Circuit held that the trial court erred in looking behind the district engineer's finding of potential pollution from Florida Rock's project. The court stated: "the proper way to challenge the decision to grant or withhold the permit would be under the Administrative Procedure Act ...," and that thus the district court and not the Claims Court had jurisdiction to decide the validity of permit denial. *Id.* at 899.

■ Defendant also points to an unreported decision of the United States District Court for Utah in *Hirsch v. Clark,* No. NC 83–0097A (August 29, 1984), involving similar allegations of failure to record, as confirmation that Last Chance's proper recourse, if any, would have been to obtain an administrative decision (*see* 43 C.F.R. §§ 4.400 through 4.452–9) and seek review under the Administrative Procedure Act in district court. *See* 5 U.S.C. §§ 701–706 (1987). Complicating plaintiff's circumstances here, however, is the fact that it has not exhausted its administrative remedies.[8] There is no "decision" ripe for review. *See Aulston,* 11 Cl.Ct. at 59.

■ Consequently, even assuming Last Chance possessed evidence of timely filing, it faces an additional obstacle in this court.

---

**8.** Defendant points to the department's decision in *Calazona Fertilizer Company,* 66 I.D. 4, 9 (1959). There, it was held that a party "can call to the Department's attention any irregularities in its proceedings at any time," and that the Department "can always consider the question of lack of authority to act," or of irregularity in its actions, "no matter how the matter is brought to its attention." Once a protest has been made, an appeal thereafter will "lie from any adverse BLM decision." *Julie Adams, et al.,* 45 IBLA 252, 254 (1980).

Assuming there were a final administrative decision rejecting Last Chance's claim, we are not empowered to review that determination. Furthermore, in view of Last Chance's declination of a transfer under 28 U.S.C. § 1631, and the lack in any event of a final administrative decision, transfer would be inappropriate.

## CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment is denied. Defendant's motion for judgment on the pleadings is granted. The clerk is directed to dismiss the complaint. No costs.