**GIRLING HEALTH SYSTEMS, INC.**

v.

**The UNITED STATES.**

**No. 372–89T.**

United States Claims Court.

Nov. 20, 1990.

---

Michael J. Christianson, Newport Beach, Cal., Atty. of Record for plaintiff.

Thomas D. Sykes, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant.

## OPINION

YOCK, Judge:

The plaintiff, Girling Health Systems, Inc., seeks money damages and declaratory relief based upon breach of an implied contract with the United States through the Internal Revenue Service. The case is before the Court on the defendant's motion to dismiss for lack of subject matter jurisdiction.

After oral argument and for the reasons discussed herein, the defendant's motion is granted, and the plaintiff's complaint will be dismissed.

### Facts

Plaintiff, a "C" corporation, was incorporated on August 1, 1982 and has consistently filed its federal income tax returns based on the cash basis method of accounting and a July 31 fiscal year. Under 26 U.S.C. § 448 of the Tax Reform Act of 1986, "C" corporations were required to utilize the accrual method of accounting for any taxable year beginning after December 31, 1986, but this requirement did not apply to the taxable year at issue that ran from August 1, 1986 to July 31, 1987. However, if plaintiff wanted to change its method of accounting (*i.e.*, from cash basis to accrual) for this fiscal year, the deadline for requesting permission for the change was

April 26, 1987, since the deadline is 270 days from the beginning of the fiscal year (August 1, 1986).

Section 448 applies to "C" corporations but not to subchapter "S" (small business) corporations. Accordingly, "S" corporations may utilize either the cash basis or the accrual method of accounting at their election. On October 15, 1986, pursuant to 26 U.S.C. § 1362 (1982), plaintiff filed Form 2553 with the Internal Revenue Service (IRS), electing subchapter "S" corporation status while retaining its July 31 fiscal year instead of adopting a December 31 taxable year.[1] Plaintiff intended to continue using the cash basis method of accounting. In order to make the "S" corporation election, plaintiff had to use IRS Form 2553 and follow the accompanying IRS instructions for that form. Central to the instant dispute is the interpretation of the following section in that set of instructions:

**E. Acceptance or Non-acceptance of Election.**—IRS will notify you if your election is accepted and when it will take effect. *You should generally receive determination on your election within 60 days after you have filed Form 2553.* Do not file Form 1120S until you are notified that your election is accepted * * *.

You will also be notified if your election is not accepted.

Care should be exercised to ensure the election is received by Internal Revenue Service. If you are not notified of acceptance or non-acceptance of your election within 3 months of date of filing (date mailed), you should take follow-up action by corresponding with the service center where the election was filed. [emphasis added]

According to plaintiff, this language created a contract wherein the IRS promised to notify plaintiff of its acceptance or non-acceptance of the election within 60 days. Accordingly, if a contract had been created, since plaintiff's election was filed on Octo-

ber 15, 1986, then the IRS would have been contractually bound to notify plaintiff on or about December 14, 1986. Such notification did not take place within that time period, and the election was eventually rejected more than one year later. Thus, if the system had worked as plaintiff had envisioned, plaintiff would have known by mid-December, 1986, whether or not it was an "S" or a "C" corporation. Since it already knew "C" corporations had to utilize the accrual method, once it knew it could not achieve "S" corporation status with a July 31 fiscal year, it would have known it had until April 26, 1987, to request a change of its method of accounting.

Unfortunately, the system failed to function as smoothly as plaintiff anticipated. Since plaintiff had received no response by mid–1987, it wrote to defendant on June 10, 1987, inquiring as to the IRS's acceptance or nonacceptance of the plaintiff's "S" corporation election. On December 15, 1987, the IRS rejected the October 15, 1986, request for election of "S" corporation status with a July 31 fiscal year.[2] The IRS did indicate plaintiff could adopt or change to a calendar year if it closed its books as of the calendar year (December 31) and computed its income and kept its books and records accordingly. On January 14, 1988, plaintiff responded to the IRS's rejection letter, indicating it was withdrawing its request for "S" corporation status since the IRS's delay in responding created too great an administrative burden to accommodate a calendar year end at that late date. Plaintiff indicated its intent to retain "C" corporation status in order to retain its July 31 year end and requested written confirmation of this (January 14, 1988) correspondence.

Once again, the IRS failed to respond promptly. On April 22, 1988, plaintiff again wrote to the IRS requesting both a response to the January 14 letter as well as confirmation of its status. On April 26, 1988, the IRS acknowledged the withdraw-

---

**1.** Plaintiff has a return receipt indicating defendant received the completed Form 2553 the next day.

**2.** Defendant's rejection letter did not refer to plaintiff's June 10, 1987 inquiry, but plaintiff submitted a receipt demonstrating its certified letter had been received by defendant.

al of plaintiff's election and that plaintiff would continue to operate as a "C" corporation with a taxable year ending July 31.

On August 2, 1988, plaintiff completed Form 3115 to request a change in accounting method to convert from cash basis to accrual for the fiscal year ending July 31, 1987. On September 2, 1988, this application was denied by the IRS as not being timely filed since the deadline was April 26, 1987. On September 22, 1988, plaintiff requested a "good cause" exception to the filing deadline, alleging the lack of timeliness was due to defendant's delay.[3] This request was denied on February 28, 1989. Thereafter, the plaintiff corporation paid certain federal taxes for its 1987 fiscal year, apparently as if the accounting changes had been allowed, and the IRS assessed certain tax deficiencies. Plaintiff did not, however, file a claim for refund of taxes, penalties, or interest in connection with this set of circumstances.

The plaintiff did, however, file a complaint in this Court based entirely on contract principles. Plaintiff's complaint, based on a theory of implied-in-fact contract, invokes this Court's contract jurisdiction under 28 U.S.C. § 1491 (1988). In its complaint, plaintiff alleges that its application on IRS Form 2553 for a change to "S" corporation status was the acceptance of the Government's offer or promise (contained in the Form 2553 instructions) to notify the taxpayer within 60 days whether or not the elected status was achieved. Since the Government failed to notify the plaintiff of its corporate status for over one year, this was a breach of its contractual obligations. This breach in turn prevented the plaintiff from timely filing for a change in accounting method, which in turn led to money damages resulting from the plaintiff's inability to spread corporate income over a period of several years. Thus, the complaint requests money damages to right this contractual wrong. The complaint also seeks declaratory relief in that it requests this Court to order the IRS to permit the plaintiff to change accounting

methods and spread certain taxable income over several years, alleging that the IRS's refusal to do so was an abuse of discretion.

Pursuant to USCC Rule 12(b)(1), defendant has now moved to dismiss this action based on lack of subject matter jurisdiction.

### Discussion

In its motion to dismiss, the Government takes the position that the plaintiff does not have a contract claim cognizable in this Court. The Government admits the plaintiff might have a tax refund claim, assuming certain jurisdictional hurdles have been complied with, but it asserts that this Court does not have subject matter jurisdiction over the plaintiff's "contract" claim. The Government argues that since the plaintiff does not have a contract, there can be no "breach" and thus no money damages. Furthermore, since there is no contract and thus no monetary damages, there can be no declaratory orders issued by this Court to the IRS. The Government points out that this Court has no general authority to issue declaratory judgments.

#### A. Implied–in–Fact Contract

In this case, the defendant disputes that the IRS has made a promise to make a determination within any given time period, not to mention 60 days. As a result, there has been no mutual assent and there can be no implied-in-fact contract. *See Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 751, 508 F.2d 817, 822 (1974). Defendant submits that the word "generally" in the phrase "[y]ou should generally receive determination on your election within 60 days * * * *" renders the phrase too nonspecific to be the basis for mutual assent or a meeting of the minds. Furthermore, the subsequent statement directing the taxpayer to make renewed contact with the IRS if there has been no response within 90 days: "[i]f you are not notified of acceptance or non-acceptance of your election within 3 months of date of filing (date mailed), you should take follow-up action by correspond-

---

**3.** The Commissioner's discretion with respect to extending the filing deadline is provided for in

Treas.Reg. § 1.9100–1(a) (1988).

ing with the service center where the election was filed" supports defendant's contention that no promise, especially with respect to any time period, was ever intended.

Defendant also urges that there is no need for further factual development of whether or not there was a "meeting of the minds" since Form 2553 is before the Court and clearly establishes the statement plaintiff relied upon is not a promise. Thus, it is appropriate to dismiss this case on jurisdictional grounds.

For its part, the plaintiff contends that courts have liberally interpreted implied-in-fact contracts for jurisdictional purposes. Plaintiff cites *Merrick v. United States*, 846 F.2d 725 (Fed.Cir.1988) for the following propositions: a) an implied-in-fact contract can be based on statements made in an IRS publication, and, b) in ruling upon a motion to dismiss for failure to state a claim, the court must assume the facts alleged (*i.e.*, a "meeting of the minds") are true.

Suits alleging implied-in-fact contracts are generally fact intensive, and determining when and whether there was the necessary meeting of the minds frequently requires resolution of a factual dispute. However, this case presents an exception to that general rule since this dispute would not benefit from further factual ventilation. There is no factual dispute—Form 2553 and the instructions pertaining thereto are before the Court and it is clear that the statement upon which plaintiff relies is not a definite promise and thus, as a matter of law, there is no mutual assent.

This is further buttressed by the caveat in the instructions in Form 2553: "If you are not notified of acceptance or non-acceptance of your election within 3 months of date of filing (date mailed), you should take follow-up action by corresponding with the service center where the election was filed." This caveat clearly indicates not only that the Government does not promise to respond within 60 days, but that a condition precedent to any further Government response is notification by the plaintiff after three months have elapsed.

Plaintiff responded approximately eight months later. Thus, even the plaintiff did not treat the instructions as embodying a contract.

A recent decision of the United States Court of Appeals for the Federal Circuit has set forth the standard of review of a USCC Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362 (Fed.Cir.1988). The court, citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), emphasized that if the facts revealed any possible basis upon which the plaintiff might prevail, the motion must be denied. *W.R. Cooper*, 843 F.2d at 1364. In *W.R. Cooper*, the Department of Labor (DOL) requested funds be withheld from the plaintiff subcontractor by the city for alleged violation of federal wage statutes. Subsequently, the DOL obtained those funds. The court held it was possible, once the facts had been further developed, that a contract existed obligating the DOL not to take the withheld funds until after it had resolved the dispute with the subcontractor over the alleged violations. *Id.*

In this case there is no possible basis upon which the plaintiff might prevail. Form 2553 is before the Court and its language is quite clear. Not only is there is no promise to respond within 60 days, but the plaintiff is expressly notified that it must take "follow-up action" if there is no response within three months. There are no more facts to develop. There are no allegations in the complaint or other papers that any IRS official was personally involved or agreed or assented to anything. Thus, the essential element to any contract that there be a meeting of the minds has not occurred.

Additionally, the basis for contractual liability in *Merrick* was not the statements made in the IRS publication, but that the parties had subsequently negotiated and the Acting District Director for the IRS involved indicated the award amount had been fixed. *Merrick* at 726. Again, in this case, there has been no negotiation between IRS personnel and the plaintiff and

no one from the IRS has assented to anything.

Similarly, although plaintiff has asserted the facts alleged in the instant complaint are analogous to those in *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402 (9th Cir.1975), in which an implied contract was recognized, that case is readily distinguishable from the case at bar. It is true, as plaintiff has asserted, that the *Armstrong* court held that an invitation to bid on a contract followed by a submission of a. bid created an implied contract that required the Government to act fairly. However, even if that case were binding precedent, which it is not, the unfair act by the Government was that it violated its own regulations by adjusting the bid of another bidder, thereby displacing the low bidder, who brought suit. *Armstrong* at 403. Unlike *Armstrong*, not only was there no act by the Government here, which buttresses the fact that there was no mutual assent, but the Government has not violated its own regulations. In short, there is no unfair act by the Government, and that was the basis of the decision in *Armstrong*.

Actually, the facts in *Cutler–Hammer, Inc. v. United States*, 194 Ct.Cl. 788, 441 F.2d 1179 (1971) are more analogous to the case at bar. The plaintiffs in that case urged that a Treasury Department regulation providing for the submission of applications to buy certain quantities of silver at a price which will be not less than $1.29 + was an "offer" which the plaintiffs accepted by filing the forms. The Court of Claims, however, held the regulation was not an offer and indicated "[i]n general, the obligation of the Government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction of statement of opinion or intention." 194 Ct.Cl. at 794, 441 F.2d at 1182.

The court noted there was no promise by the Government to sell any silver at the price mentioned, and concluded "[i]t requires a distortion of plain English to infer that making an application in conformity with the terms of this Regulation would constitute an acceptance of an offer where-

by the United States intended to bind itself." 194 Ct.Cl. at 795, 441 F.2d at 1183. *See also, Tree Farm Dev. Corp. v. United States*, 218 Ct.Cl. 308, 320, 585 F.2d 493, 500 (1978), involving a Government invitation to file for a federal loan guarantee: "We quote from *Cutler–Hammer* to show that invitations by the Government to file applications do not necessarily equal an operative offer, the acceptance of which will result in a binding contract."

Additionally, it should be noted that the instructions accompanying Form 2553 made clear that the acceptance of subchapter "S" corporation status election was not automatic, and thus, the election was subject to Government approval. Therefore, a contract did not come into existence since

> [p]roviding that the application be subject to such approval is alone sufficient to negate existence of a contract until the approval is granted. * * * Even if the language could otherwise be given such a meaning [as an operative offer], the requisite approval "was a condition precedent to the formation of any binding contracts." *D.C. Andrews & Co. v. United States*, 154 Ct.Cl. 460, 465, 292 F.2d 280, 283 (1961).

*Cutler–Hammer*, 194 Ct.Cl. at 794–95, 441 F.2d at 1182. *Cf. Grav v. United States*, 14 Cl.Ct. 390, 392–93 (1988), *aff'd* 886 F.2d 1305 (Fed.Cir.1989) (when statute sets forth the offer in absolute terms so there is no discretion to accept or reject the application, it has all the attributes of a contractual offer). Furthermore, in view of *Cutler–Hammer*, an invitation from the Government to submit an application to buy is not, alone, an offer to contract, by analogy, an invitation from the Government to elect corporation status similarly fails as an offer to contract. Additionally, the "you should generally receive determination on your election within 60 days * * *" language is an example of "mere prediction or statement of opinion or intention * * *" indicated by the *Cutler–Hammer* court as insufficient to be an offer to contract. 194 Ct.Cl. at 794, 441 F.2d at 1182.

In a similar vein, in *Last Chance Mining Co. v. United States*, 12 Cl.Ct. 551, 556

(1987), *aff'd without opinion*, 846 F.2d 77 (Fed.Cir.1988), *cert. denied*, 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 47 (1988), the Court found that statute and regulations governing procedures for filing mining claims were not offers. The court noted that even if, in the broadest sense, the statute was an "offer," it was

> certainly not an offer to *contract*. It is more accurately characterized as a unilateral ultimatum on the part of the Government. It would do violence to traditional contract theory, not to mention the operation of government, to hold that any statute requiring some action by a citizen to obtain a benefit or protect a right constituted an open offer to contract.

12 Cl.Ct. at 556. (emphasis in original) (footnote omitted). Basically, all of these cases stand for the same proposition: that mere solicitations, invitations or instructions from the Government are not offers to contract that bind the Government upon plaintiff's completion of a form, even when the solicitations, invitations or instructions are embodied in a statute or regulation. The proposition is even stronger here since mere instructions accompanying a *form* are involved, rather than instructions in a regulation or statute.

Despite plaintiff's characterization of this case as a breach of an "implied contract," defendant submits the essence of plaintiff's case is that it is a tax refund suit, and such suits are subject to special procedural rules with which the plaintiff has failed to comply.[4] Defendant characterizes this as a tax refund suit since plaintiff's damages claim (*i.e.*, for the amount of additional taxes it had to or would have to pay plus compensation for the lost use of the money paid for taxes) is shaped by the tax benefits to which it claims entitlement. Accordingly, this tax-related claim is not a

"contract," and therefore is not encompassed by the contract element of the statute setting forth this Court's jurisdiction, 28 U.S.C. § 1491.

▮ Plaintiff's response is that this is a contract dispute and the mere mention of the word "taxes" does not convert this lawsuit into a tax controversy. Plaintiff denies this is a tax refund suit since the claim is limited to a dispute over plaintiff's entitlement to the benefit of its bargain under the Form 2553 submission, rather than a dispute over the amount of tax.

Plaintiff cites *Parrish v. Loeb*, 558 F.Supp. 921 (C.D.Ill.1982) to support its argument that the mention of the word "taxes" will not convert a lawsuit into a tax refund suit. While plaintiff may be correct in asserting that the mere mention of the word "taxes" will not convert a lawsuit into a tax controversy, the converse is also true. Thus, merely mentioning the word "contract" does not convert a tax controversy into an action based on contract and thus bring it within the jurisdiction of this Court. This lawsuit is basically a tax refund suit. As the predecessor to this Court has held in *West Pub. Co. v. United States*, 198 Ct.Cl. 668, 673 (1972), a claim that is at bottom a tax refund suit is not based on contract.[5]

Basically, plaintiff's damages claim is shaped by the tax benefits to which it claims entitlement. The claim is for the amount of money plaintiff had to or would have to pay as a result of the IRS's failure to consent to a change in accounting method. This type of claim has been treated as a tax refund suit. *See, Diebold, Inc. v. United States*, 891 F.2d 1579 (Fed.Cir. 1989), *cert. denied*, — U.S. —, 111 S.Ct. 73, 112 L.Ed.2d 47 (1990).

---

**4.** For example, under 26 U.S.C. § 7422(a) (1988), plaintiff must first file an administrative claim for a tax refund, and under USCC Rule 9(h)(6), plaintiff must plead specific information with respect to the tax recovery sought.

**5.** There is an exception to this general rule—this Court has implied-in-fact contract jurisdiction in situations wherein a nontaxpayer (third party)

seeks return of levied property used to pay the taxes of another. *Document Management Group, Inc. v. United States*, 11 Cl.Ct. 463, 467 (1987) (citing *Gordon v. United States*, 227 Ct.Cl. 328, 649 F.2d 837 (1981) and *Kirkendall v. United States*, 90 Ct.Cl. 606, 31 F.Supp. 766 (1940)). *See also West Pub. Co.* at 677. However, there is no third party involvement here.

There simply is no implied-in-fact contract here on which to base jurisdiction in this Court.

### B. Declaratory Relief

 In regard to the plaintiff's request for declaratory relief, the defendant concedes this Court has the power to grant declaratory relief under Section 1491(a)(3), but stresses this power is quite limited as it is only applicable to procurement bid protest disputes. Accordingly, since this case does not involve a procurement bid dispute, declaratory relief is unavailable.

Similarly, 28 U.S.C. § 1507 (1988), granting this Court limited authority to grant declaratory judgment with respect to the tax code, is by its express language inapplicable here. Section 1507 is confined to declaratory judgments sought under section 7428 of the Internal Revenue Code of 1986, relating to charitable organizations, and the provisions of section 7428 (pertaining to status and classifications of organizations under section 501(c)(3)) are not applicable to this dispute.

While it is possible for this Court to grant equitable relief when the equitable relief is secondary or subordinate to a primary claim for monetary damages, defendant contends, for the reasons set forth *supra,* this Court has no jurisdiction over the claim for monetary relief. Since there is no primary claim for monetary damages over which this Court has jurisdiction, the Court has no incidental jurisdiction over the equitable claims.

The defendant notes that the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1988), creates a declaratory judgment remedy in federal district courts with respect to federal taxes, but this relief, like that of 28 U.S.C. § 1507, is limited to actions brought under section 7428 of the Internal Revenue Code of 1986. As defendant has noted *supra,* the provisions of section 7428 are inapplicable here.

Defendant alleges that despite plaintiff's contention that it is not requesting declaratory relief as to the amount of federal tax due, a declaration that the income could be spread over a number of years has an impact on the amount of tax due in each affected period. Furthermore, the broad language of "with respect to Federal taxes" within the meaning of the Declaratory Judgment Act does not limit the Act's application to only that relief having no effect on the amount due.

With respect to declaratory relief, plaintiff argues that since the complaint states a cause of action for monetary damages based upon an implied contract, rather than a tax refund suit, the Court has jurisdiction over the primary monetary claim and the associated, subordinate request for declaratory relief. The plaintiff argues further that since the instant case is a contract dispute and does not involve a controversy with respect to federal taxes, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not bar this lawsuit.

Plaintiff's arguments with respect to the availability of a declaratory judgment must fail. As summarized *supra,* since there is no contract, the Court lacks jurisdiction over the primary claim for money damages so there is no jurisdiction over the subordinate claim for declaratory relief.[6] Additionally, this Court cannot issue declaratory judgments unless specifically authorized by statute to do so. *See United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Declaratory relief is generally unavailable when the underlying controversy involves federal taxes. As the Supreme Court held in *Bob Jones University v. Simon,* 416 U.S. 725, 732 n. 7, 94 S.Ct. 2038, 2044 n. 7, 40 L.Ed.2d 496 (1974), the Declaratory Judgment Act, 28 U.S.C. § 2201, has been said to reflect "congressional antipathy for premature interference with the assessment or collection of any federal tax * * *."

The instant cause of action is at bottom a tax refund claim, not a contract claim. Therefore, not only does this Court lack specific statutory authorization to issue a declaratory judgment here, but such an act is specifically excluded by the clear language of 28 U.S.C. §§ 1507 and 2201 that prohibit declaratory relief when the contro-

---

**6.** Plaintiff admits that the requested declaratory relief cannot stand alone.

versy involves federal taxes. There has been no assent by the IRS and thus plaintiff is not entitled to rely upon his own view of the election. Furthermore, judicial redress is or was available in the form of a tax refund suit. Under the facts as alleged here, there is no basis for declaratory judgment relief.

### C. Amendment to the Complaint

■ The final question for this Court, after determining both that there was no contract and that declaratory judgment is unavailable for this type of claim, is whether to allow plaintiff to amend the complaint from an action based on contract to an action based on a tax refund. The answer is no.

The burden is on the plaintiff to plead and prove subject matter jurisdiction once it has been appropriately challenged. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Since this is a tax refund suit, plaintiff has failed to meet the procedural requirements (*e.g.*, USCC Rule 9(h)(6)). Any attempt to amend the complaint would be futile,[7] since, as plaintiff acknowledges, neither has the entire tax amount been paid nor has a claim been filed before filing suit. These are jurisdictional requirements. *Flora v. United*

*States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (taxes must be fully paid before a suit for their recovery can be commenced); *Wall Industries, Inc. v. United States*, 10 Cl.Ct. 82 (1986) (under 26 U.S.C. § 7422(a), an administrative claim for refund is a jurisdictional prerequisite for maintenance of a suit). Since there is no duly filed administrative claim at this point, this Court, even if the complaint were to be amended, would still be without jurisdiction. In addition, since plaintiff has stated during the oral hearing that it believes the statute of limitations is still open, there can be no irreparable harm if the complaint is dismissed.

### CONCLUSION

For the reasons discussed herein, the defendant's motion to dismiss for lack of jurisdiction is granted, and the plaintiff's complaint will be dismissed.

Each party is to bear its own costs.

---

7. Furthermore, plaintiff originally relied upon contract jurisdiction, and, pursuant to USCC Rule 8(a)(1), may not now assert tax refund jurisdiction. *Document Management Group, Inc. v. United States*, 11 Cl.Ct. 463, 465–66 (1987).