**ARCH ENGINEERING COMPANY, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–2307.**

United States Court of Appeals, Federal Circuit.

Feb. 11, 1986.

Robert M. Entwisle, III of Miller & Entwisle, Pittsburgh, Pa., argued for appellant.

Kathryn Rooklidge, of the Tax Div., Dept. of Justice, Washington, D.C., argued for appellee. With her on brief were Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Robert A. Bernstein, Attys.

Before DAVIS, BALDWIN and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

The Internal Revenue Code makes the proper filing of a refund claim with the Internal Revenue Service (IRS) a mandatory prerequisite to any tax refund suit in court (26 U.S.C. § 7422(a)) and provides that such a refund claim must be filed within three years from the time the return was filed or two years from the payment of the tax, whichever is later (26 U.S.C.

§ 6511(a)). In this instance, the formal refund claims for the involved tax years 1975–1977 were filed after these dates. The problem is whether the limitation period declared by § 6511(a), *supra,* was nevertheless met, tolled, or deferred by certain documents or circumstances on which appellant relies. The Claims Court held not, and we affirm.

## I.

Appellant Arch Engineering Company is the successor of both Pearson Manufacturing Company, Inc. (Pearson) and Pittsburgh Metals Fabricating Company (Pittsburgh) which paid the taxes now sought to be recovered in this suit in the Claims Court. In 1978 the IRS decided that Pearson and Pittsburgh were members of one controlled group of four corporations and were therefore collectively entitled to one surtax exemption. Because the income tax return for the four corporations had been prepared as if they involved two controlled groups with one exemption for each group, IRS determined that additional taxes were due by Pearson and Pittsburgh, and so notified them on December 4, 1978. After protest[1] and execution of certain documents—to be described in the next two paragraphs of this opinion—Pearson paid its alleged deficiencies on September 21, 1979 (for 1975) and September 27, 1979 (for 1976 and 1977). Pittsburgh, after similar protest, paid its deficiencies on October 25, 1979.

These payments were made according to settlements (between IRS and the two taxpayers) under which two IRS forms were executed. On August 1, 1979, Pearson executed IRS Form 870–AD ("Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment") in which Pearson agreed to pay the assessed deficiencies while preserving its right to file a formal refund claim with respect to its surtax exemption protest. This objective was accomplished by the following language

(drafted by taxpayer and accepted by IRS) added to the back of Form 870–AD:

All other conditions contained in this waiver do not in any way estop or bar taxpayer from filing timely claims for refund (refund claims) or a timely suit for refund in court (refund suit) to recover those portions of the tax deficiencies to which taxpayer hereby agrees to the extent that said tax deficiencies in part are based on the denial of multiple surtax exemptions * * *. Taxpayer shall have the right to file said timely refund claims and initiate said timely refund suit as though this waiver had not been signed or executed by taxpayer and Commissioner, with neither Commissioner nor United States of America having the right to raise this waiver as a basis for refusing said timely refund claims or opposing said timely refund suit founded on said refund claims if the defense is that the execution of this waiver by taxpayer had the legal effect of estopping or barring a recovery of taxes founded on said refund claims or said refund suit.

*This offer of a waiver of restrictions is not to be construed as a claim for refund or credit, formal or informal, concerning the matters for which the right to file a claim is reserved.* (Emphasis added.)

On the same day (August 1, 1979), Pittsburgh executed IRS Form 870 ("Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment") which contains the following in its printed text:

NOTE: If you consent to the assessment of the deficiencies shown in this waiver, please sign and return the form in order to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe addi-

---

**1.** The protests were followed by submission of a supporting memorandum of law.

tional tax; nor extend the time provided by law for either action.

If you later file a claim and the Service disallows it, you may file suit for refund in a district court or in the United States Court of Claims, but you may not file a petition with the United States Tax Court.

In January 1982, the Supreme Court decided *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792, accepting in general the same position that these taxpayers had followed in defining the membership of their control group (and, thus, the amount of surtax exemption). As a result, on November 15, 1982, Pearson and Pittsburgh filed formal refund claims for the disallowed surtax tax exemptions. IRS denied these claims as untimely, and this suit was begun in the Claims Court on October 20, 1983. The Government moved to dismiss for lack of a proper refund claim. As we have said, the Claims Court agreed and held that no timely refund claim had been filed.

## II.

■ Taken by themselves, the formal refund claims of November 1982 were clearly too late under the statute (*i.e.*, more than two years after payment in September and October 1979). Appellant says, however, that its predecessors had made timely informal refund claims in 1979 through their protests, memoranda of law, Forms 870–AD and 870, and payments "under protest." Proper informal refund claims have long been accepted. *E.g., American Radiator & Standard Sanitary Corporation v. United States*, 318 F.2d 915, 920, 162 Ct.Cl. 106 (1963). There are no rigid guidelines except that an informal claim must have a written component and "should adequately apprise the Internal Revenue Service that a refund is sought and for certain years." *Id.* 318 F.2d at 920. Appellant says that those requirements were fulfilled here when its predecessors completed their pro-

tests and settlements with the IRS in September-October 1979.

■ We agree with the Claims Court that the IRS was *not* adequately apprised that Pearson and Pittsburgh were seeking a refund. Their protests (including the supporting legal memorandum) were a normal part of the internal administrative process within the IRS, not any form of an actual refund request. In fact, the deficiency payments had not yet been paid and a refund claim was not yet in order.

■ Nor did the waiver forms (870–AD and 870) evidence an informal refund claim. Like the protests, they were executed before payment was made. Even more importantly, the final paragraph of the additional language expressly added to 870–AD said, in the plainest of words, that "[t]his offer of waiver of restriction is *not* to be construed as a *claim for refund* or credit, *formal or informal,* concerning the matter for which the right to file a claim is reserved" (emphasis added). Other language in the supplementary addition to the form made it clear that the taxpayer would not be estopped from *thereafter* filing a *timely* refund claim, if it chose to do so. Appellant argues that that language in itself estopped the IRS from ever raising Form 870–AD as indicating, in any manner, that no claim had actually been filed. The only fair reading, however, is that the Government simply agreed not to use the form as a bar to a *future* filing of a proper and timely refund claim.

Similarly, Form 870 (signed by Pittsburgh) contained a Note very specifically telling the taxpayer that its signature to the form "will not prevent you from filing a claim for refund (*after you have paid the tax*) if you *later* believe you are so entitled * * *. If you *later* file a claim, and the Service disallows it, you may file suit for refund * * *" (emphasis added). In a word, the only correct interpretation of the form is that it was not, in any way, an informal refund claim.[2]

---

**2.** In a July 1979 letter to IRS, counsel for Pittsburgh agreed to use Form 870, and added that

the taxpayer "could" claim a refund "if it chose to do so."

The conclusion must be that these two taxpayers did not in fact apprise the IRS in September-October 1979 that they were seeking a refund.

## II.

■ Another of appellant's contentions is that the statute of limitations was somehow tolled because there existed, from the time of the 1979 protests until the Supreme Court's 1982 decision in *Vogel Fertilizer,* a conflict in the case law on multiple surtax · exemptions. There was, indeed, such a conflict but it would trench severely on the specific text and purpose of the Code's limitation provision to convert the existence of a judicial difference-of-opinion into an automatic deferral of the definite statutory obligation to file a timely refund claim. The taxpayer's right to file that claim arose when they paid more than in law and fact they owed to the IRS. Under the federal statute, the uncertainty or unsettled nature of the claim did not defer or prolong the necessity for a timely filing within the exact time limits set by Congress.

Appellant invokes *Stuart v. United States,* 130 F.Supp. 386, 131 Ct.Cl. 174 (1955), but that case did not posit any general principle that conflicting lower court decisions, or continuation of litigation on the particular legal point, tolls or extends the limitations period. Rather, that decision turned on that court's inference from the special form agreed to by that taxpayer as combined with the then litigation circumstances, which were together interpreted to make clear that the plaintiff actually desired a refund and that the tax authorities were well aware of that fact. Here, in contrast, the forms agreed to by appellant's predecessors in 1979 disclaimed the very fact that a present refund claim was then being filed. Even the existence of continuing litigation on the point decided in *Vogel Fertilizer* would not overcome or neutralize those specific statements.

*Affirmed.*