Susan Helene **MINEHAN**,
Pro se, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 05–924T.

United States Court of Federal Claims.

Jan. 26, 2007.

Susan Helene Minehan, pro se.

Karen Servidea, United States Department of Justice, with whom were Steven I. Frahm, David Gustafson, and Eileen J. O'Connor, Assistant Attorney General, Washington, D.C., for defendant.

## OPINION

Bush, Judge.

This matter comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth herein, the court concludes that jurisdiction over this matter is absent. Defendant's motion to dismiss is granted, and the case is dismissed.

## BACKGROUND

This opinion follows briefing by the parties on a number of issues which affect the jurisdiction of the United States Court of Federal Claims. Before examining the contours of this court's jurisdiction, however, a brief summary of the facts which led to the current dispute is appropriate. The parties agree on the facts of this case, as recited herein, for purposes of this motion only.

In this lawsuit, plaintiff Susan Helene Minehan claims that the United States Internal Revenue Service (IRS) wrongfully denied her

request for an income tax refund. The facts which led to the rejected claim are as follows. At some time before the start of tax year 1998, Ms. Minehan suffered a work-related illness while employed by the federal government. Because that illness left plaintiff unable to work, the United States Department of Labor (DOL, the Department) granted non-taxable workers' compensation benefits to her. *See* 26 U.S.C. § 104(a)(1) (2000). In November 1996, however, after plaintiff had received those benefits for a number of months, the Department informed Ms. Minehan that her formal claim for workers' compensation had been denied. From that point forward, the United States Office of Personnel Management (OPM) issued taxable retirement benefits to plaintiff in lieu of nontaxable workers' compensation. *See* Def.'s App. B at 20–21. As early as November 19, 1997, Ms. Minehan disputed the DOL's decision. On December 10, 1999, plaintiff formally appealed the denial of her workers' compensation claim to the DOL Employees' Compensation Appeals Board (the Board).

While her appeal was pending, Ms. Minehan filed a federal income tax return for the 1998 tax year.[1] That return was dated May 30, 2000, and thus was submitted more than one year past its April 15, 1999 due date. On the tax return, Ms. Minehan identified the payments she had received from the federal government during 1998 as taxable retirement benefits. Plaintiff did not, however, include information regarding her pending dispute with the DOL, or her quest to have the retirement payments converted to nontaxable workers' compensation benefits. Nor did Ms. Minehan file a protective claim with the IRS, to alert the agency that the characterization of those benefits, for tax purposes, might change in the future.[2]

Shortly thereafter, the IRS processed Ms. Minehan's return based on the information she had provided, and refunded to her the amount in overpayment that she had requested.

On March 25, 2002, Ms. Minehan received a favorable decision on her workers' compensation appeal. On that date, the Board overturned DOL's denial of benefits and awarded workers' compensation payments to plaintiff retroactive to November 22, 1996. On July 14, 2003, more than three years after her first filing, plaintiff amended her 1998 tax return accordingly. In an IRS Form 1040X Amended U.S. Individual Income Tax Return, Ms. Minehan requested an additional refund on her 1998 return, on the ground that the workers' compensation benefits which she had been awarded retroactively during that year were nontaxable. The Form 1040X requested that the $11,517 in retirement payments Ms. Minehan had received from OPM, which had initially been reported as taxable income, be treated as tax-exempt workers' compensation benefits and excluded from plaintiff's gross income.[3] *See* Def.'s App. B at 18–20. Taking into account the changes to her 1998 return, plaintiff's Form 1040X requested an additional tax refund in the amount of $4,044. On September 8, 2003, however, the IRS sent a notice of disallowance to plaintiff, informing her that the refund claim had been rejected. Def.'s App. B at 23–25. The notice explained that the Form 1040X had been filed outside the applicable period of limitations.

On August 24, 2005, plaintiff filed suit in the Court of Federal Claims, arguing that she was, in fact, entitled to a tax refund of $4,044 plus interest from the IRS. In response, the government moved to dismiss Ms. Minehan's refund claim for lack of sub-

---

1. Plaintiff filed the return jointly with her husband, Charles Minehan.

2. Protective claims are used by taxpayers to avoid the statute of limitations bar by informing the IRS of future contingencies which may alter their tax liability, for example, if a taxpayer hopes to ultimately be awarded tax-exempt benefits in lieu of a taxable pension. *See Sullivan v. United States*, 46 Fed.Cl. 480, 490 n. 13 (2000); *see also United States v. Kales*, 314 U.S. 186, 195–96, 62 S.Ct. 214, 86 L.Ed. 132 (1941). Protective claims, in other words, are used to "assert poten-

tial future rights associated with tax refunds." *Sullivan*, 46 Fed.Cl. at 491 (explaining that the plaintiffs "could have announced their intention to claim a greater exemption in the future, transforming the joint returns also into protective assertions of present rights, should the amounts of the forward-looking claim become a reality").

3. The Form 1040X also reported a credit in the amount of $824, but nothing in the record explains the basis for this newly claimed credit.

ject matter jurisdiction, on the ground that it was untimely. The United States argued that no exception to the Internal Revenue Code's (IRC) timeliness rule was permissible, and that, had Ms. Minehan wished to preserve her right to a refund on the workers' compensation income, she should have filed a protective claim with the IRS in advance of the filing deadline set forth in the Code.

Rather than responding directly to the United States' motion to dismiss, plaintiff amended her complaint. In her new pleadings, which are now pending before the court, Ms. Minehan does not seek a refund from the IRS. Instead, plaintiff requests damages in the same amount as her former refund claim, based on the IRS' "failure to make taxpayer information applicable to Protective Claims *readily available to the taxpayer in a written publication*." Am. Compl. ¶ 2 (emphasis in original). Following a stay in which plaintiff was given an opportunity to retain counsel, the United States renewed its motion to dismiss Ms. Minehan's suit for lack of subject matter jurisdiction.[4] Because plaintiff has been afforded ample time to respond to defendant's arguments and has filed several pleadings related to this matter, resolution of the government's motion is now appropriate.[5]

## DISCUSSION

### I. Jurisdiction

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2000). That statute "confers jurisdiction upon the Court of Federal Claims over [ ] specified categories of actions brought against the United States...." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) *(en banc ).* These include claims founded upon the Constitution, an act of Congress, a regulation promulgated by an executive department, any express or implied contract with the

United States, or any claim for liquidated damages in cases not sounding in tort. *Id.* (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Fisher,* 402 F.3d at 1172. The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. *Id.; see also Ky. Bridge & Dam, Inc. v. United States,* 42 Fed.Cl. 501, 516 (1998) (citing *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed. Cir.1983) *(en banc )).* Instead, "to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher,* 402 F.3d at 1172. In other words, the source must be money-mandating, in that it " 'can fairly be interpreted as mandating compensation by the Federal Government....' " *Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967) and citing *Mosca v. United States,* 189 Ct.Cl. 283, 417 F.2d 1382, 1386 (1969)); *Khan v. United States,* 201 F.3d 1375, 1377–78 (Fed.Cir. 2000). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States,* 956 F.2d 259, 261 (Fed.Cir.1992) (citing *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

### II. Standard of Review: Motion to Dismiss for Lack of Subject Matter Jurisdiction, RCFC 12(b)(1)

Jurisdiction may be challenged by the parties or by the court on its own initiative at

---

4. Plaintiff's attempt to secure counsel was ultimately unsuccessful, and she continues to pursue this lawsuit *pro se.*

5. In response to the United States' motion to dismiss her claims, Ms. Minehan filed a Motion to Request a Statutory Waiver of Sovereign Immunity. Although this motion was not technically designated as a response to defendant's mo-

tion, it includes detailed arguments in opposition to defendant's request. The court construes plaintiff's *pro se* pleading liberally and deems it a response to the government's motion. *See and compare Ebert v. United States,* 66 Fed.Cl. 287, 289 (2005) (treating a submission by *pro se* litigant in an income tax refund case as a cross-motion for summary judgment).

any time, and if jurisdiction is found to be lacking, this court must dismiss the action. Rule 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC). The court's determination of jurisdiction begins with an examination of the complaint, "which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997). In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction, under RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true, and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, the nonmovant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Cubic Def. Sys., Inc. v. United States,* 45 Fed.Cl. 239, 245 (1999) (citing *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993)).

It is important to recognize that, as a *pro se* litigant, plaintiff is entitled to certain leniencies which are afforded to parties proceeding in that capacity. This is particularly true when ruling on a motion to dismiss, as "[i]t is settled law that the allegations of … a [*pro se*] complaint, however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotations omitted); *Troutman v. United States,* 51 Fed.Cl. 527, 531 (2002). Indeed, in such cases, courts have "strained [their] proper role in adversary proceedings to the limit, searching … [the] record to see if [the] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). However, while "[t]he fact that [a plaintiff] acted pro se in the drafting of his complaint

may explain its ambiguities, … it does not excuse its failures, if such there be." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir. 1995). In other words, the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements. *Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d, 1378, 1380 (Fed.Cir.1987); *Biddulph v. United States,* 74 Fed.Cl. 765 (2006). Similarly, "[t]here is no duty on the part of the trial court … to create a claim which [the plaintiff] has not spelled out in his pleading…." *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)).

### III. Merits

In its current motion to dismiss, the United States argues that, at bottom, plaintiff's amended complaint does no more than renew an untimely tax refund request, and thus does not properly invoke the subject matter jurisdiction of this court. The government also contends that, to the extent plaintiff seeks equitable tolling of the statute of limitations which bars her refund claim, no such tolling is permissible or appropriate. Finally, defendant claims that Ms. Minehan's damages claim should be dismissed "[b]ecause there is no statutory waiver of sovereign immunity for claims that the IRS failed to provide certain information to taxpayers," and so, the court lacks jurisdiction over a request for such damages. Def.'s Mot. at 7.

### A. Timeliness of Tax Refund Claim

#### 1. Formal Refund Claim

Defendant argues first that Ms. Minehan has reasserted an income tax refund claim which is untimely and must be dismissed. To the extent that plaintiff's amended complaint does set forth a refund claim, the court agrees with the government.

There is no question, of course, that the Court of Federal Claims may exercise jurisdiction over tax refund suits. *See* 28 U.S.C. §§ 1346(a)(1), 1491(a)(1) (2000). As defendant correctly points out, however, certain prerequisites must be met before a plaintiff may properly invoke this court's jurisdiction

in that area. Most importantly to this lawsuit, a tax refund suit may not be maintained by a plaintiff "unless a claim for refund of [the] tax has been filed [with the IRS] within the time limits imposed by § 6511(a)" of the Internal Revenue Code. *United States v. Dalm,* 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *see* 26 U.S.C. § 7422(a) (2000). Section 6511(a), in turn, requires that a tax refund request be filed within either: (1) three years from the date on which the return giving rise to the refund claim was filed; or (2) two years from the date on which the tax was paid, whichever is later.[6] 26 U.S.C. § 6511(a) (2000). Together, these statutes dictate that, before a plaintiff may pursue a tax refund suit, he or she must file a claim for a refund from the IRS within the window of time prescribed by § 6511(a). *See Dalm,* 494 U.S. at 602, 110 S.Ct. 1361 (stating that "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' may not be maintained in any court"); *Wertz v. United States,* 51 Fed.Cl. 443, 446 (2002). It is well-settled that satisfaction of that filing requirement is a jurisdictional prerequisite to suit in the Court of Federal Claims. *Sun Chem. Corp. v. United States,* 698 F.2d 1203, 1206 (Fed. Cir.1983) ("It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit."); *Stelco Holding Co. v. United States,* 42 Fed. Cl. 101, 104 (1998) ("It is firmly settled that a properly filed administrative claim for refund is the indispensable prerequisite to this court's exercise of jurisdiction over a taxpayer's suit for refund."). Strict compliance with § 6511(a)'s limitations period is essential because "[u]nder settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Stelco Holding,* 42 Fed.Cl. at 104 n. 5 (quoting *Dalm,* 494 U.S. at 608, 110 S.Ct. 1361 (internal quotations omitted)).

Here, Ms. Minehan seeks a refund of taxes paid in conjunction with her 1998 income tax return. The record shows that this return was filed on May 30, 2000, and that plaintiff paid her 1998 income taxes through withholding credits. Under IRC § 6513, taxes paid via withholding credits are deemed to have been paid "on the 15th day of the fourth month following the close of [the] taxable year with respect to which such tax is allowable as a credit...." 26 U.S.C. § 6513(b)(1) (2000). Ms. Minehan's tax was deemed paid, therefore, four months and 15 days after the last day of 1998, or April 15, 1999. It follows that plaintiff was required to file a refund claim by the latter date of April 15, 2001 (two years after the date of payment) or May 30, 2003 (three years after the date of filing). The record is clear, however, that Ms. Minehan's Form 1040X was not filed until July 14, 2003, forty-five days after May 30, 2003.[7]

---

6. 26 U.S.C. § 6511(a) states as follows:

**§ 6511. Limitations on credit or refund**
(a) **Period of limitation on filing claim.**— Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.
26 U.S.C. § 6511(a) (2000).

7. Plaintiff's income tax refund claim must also be dismissed in light of 26 U.S.C. § 6511(b)(2)(A), a section of the IRC which "imposes a ceiling on the amount of credit or refund to which a taxpayer is entitled as compensation for an overpayment of tax." *Baral v. United States,* 528 U.S.

431, 432, 120 S.Ct. 1006, 145 L.Ed.2d 949 (2000); *see also Commissioner v. Lundy,* 516 U.S. 235, 240, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (explaining that § 6511 contains two separate timeliness provisions: (1) § 6511(b)(1)'s filing deadline and (2) § 6511(b)(2)'s "look-back" periods); *Wertz v. United States,* 51 Fed.Cl. 443, 446 (2002). Section 6511(b)(2)(A) provides that, even in situations in which a refund claim is timely, because it was filed within three years of the initial return, "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A) (2000). In other words, the statute "imposes limitations on the extent to which a taxpayer may look back in time and recover taxes paid in a prior taxable period." *Wertz,* 51 Fed.Cl. at 446. It mandates, specifically, that a claimant may only recoup

Because the refund claim was untimely, plaintiff may not rely on it to satisfy the jurisdictional prerequisite to suit in this court.

## 2. Informal Refund Claim

In an effort to address this deficiency, Ms. Minehan also alleges that she filed an informal refund claim with the IRS in advance of the filing deadline, and that this informal claim creates jurisdiction over her suit. That argument is based on plaintiff's allegation that she spoke with an IRS employee on January 29, 1999 regarding the possibility of obtaining a refund after her workers' compensation appeal had been resolved. Defendant argues, however, that Ms. Minehan's verbal contact with IRS personnel does not qualify as an informal claim, even if it occurred before the filing deadline, because plaintiff has not alleged that she provided the agency with any written communication at that time. *See* Def.'s Mot. at 9–10. The United States insists that submission of a written document is a mandatory component of any informal refund claim.

As plaintiff correctly points out, the validity of the informal claim doctrine on which she relies was recognized by the United States Supreme Court in *United States v. Kales,* 314 U.S. 186, 195, 62 S.Ct. 214, 86 L.Ed. 132 (1941). In that case, a taxpayer submitted an informal letter to the IRS, within the limitations period, which claimed a tax refund. However, because the letter was not filed on the correct form, it did not comply with IRS regulations. *Id.* at 190–91, 62 S.Ct. 214; *see also Computervision Corp. v. United States,* 445 F.3d 1355, 1364 (Fed. Cir.2006). Later, the taxpayer filed an untimely amendment that did comply with the applicable regulations. *Kales,* 314 U.S. at 191, 62 S.Ct. 214. On review, the Supreme Court permitted the claim to go forward. The Court held that "a [timely] notice fairly

advising the Commissioner of the nature of the taxpayer's claim ... will nevertheless be treated as a[n effective] claim, where formal defects ... have been remedied by amendment filed after the lapse of the statutory period." *Id.* at 194, 62 S.Ct. 214; *see also Computervision,* 445 F.3d at 1364.

The informal claim doctrine has been recognized by this court and its predecessor for more than forty years. *See Computervision,* 445 F.3d at 1364 (citing *Arch Eng'g Co. v. United States,* 783 F.2d 190, 192 (Fed.Cir. 1986); *Barenfeld v. United States,* 194 Ct.Cl. 903, 442 F.2d 371, 374 (1971); *Stuart v. United States,* 131 Ct.Cl. 174, 130 F.Supp. 386, 388–90 (1955); *Am. Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. 106, 318 F.2d 915, 920–22 (1963)); *see also Silberman v. United States,* 40 Fed.Cl. 895, 904 (1998) ("Caselaw does provide that, if the IRS is actually but 'informally' on notice of pertinent details of a taxpayers [sic] claim, the statute of limitations will be tolled, even if the official claim filed by the taxpayer was inadequate."); *Stelco Holding,* 42 Fed. Cl. at 109 ("Courts have long applied the *informal* claim doctrine in order to exercise jurisdiction over cases in which the taxpayer's formal administrative claim for refund is untimely filed, where the facts and circumstances transpiring prior to the expiration of the statute of limitations, viewed in their totality, demonstrate that the Commissioner was given timely and adequate informal notice that the taxpayer sought a refund of taxes overpaid."). Indeed, it is now wellsettled that "a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period." *Computervision,* 445 F.3d at 1364. Accordingly, in situations in which a valid informal claim has been made by a taxpayer, formal compliance with the timeliness statute is excused. *Id.*

taxes which were payed during the three calendar years (plus any extension of time) which immediately preceded his or her refund claim. Here, Ms. Minehan's claim was filed on July 14, 2003, and so, even if that claim were timely, plaintiff would only be able to recover taxes which were paid between July 14, 2000 and July 14, 2003. Ms. Minehan's 1998 taxes were deemed to have been paid, however, on April 15,

1999, which is clearly outside the window for recovery on her claim. *See and compare Wertz,* 51 Fed.Cl. at 447. Plaintiff has not alleged, nor is there any record of, an extension which would have extended that window of time. Because Ms. Minehan hopes to recoup funds which were paid outside the period of time for which recovery is allowable under the IRC, her refund claim undoubtedly fails.

■ Regarding the conventions for filing an informal tax refund claim, this court and the United States Court of Appeals for the Federal Circuit have held that an informal claim must include a written component placed in the possession of the agency prior to the expiration of the limitations period. *Arch Engineering,* 783 F.2d at 192; *Stelco Holding,* 42 Fed.Cl. at 109 (stating that "the one indispensable element . . . is a written component" (internal quotations omitted)); *see also Wertz,* 51 Fed.Cl. at 447. Beyond that requirement, however, no rigid guidelines exist for determining whether a taxpayer has made a valid informal refund claim. *Stelco Holding,* 42 Fed.Cl. at 109 (citing *Arch Engineering,* 783 F.2d at 192); *see also Wall Indus., Inc. v. United States,* 10 Cl.Ct. 82, 98 (1986) ("[T]he cases in this court emphasize that there is no preconceived set of universal facts and circumstances which otherwise define an efficacious informal claim."). Generally, in order to demonstrate the existence of an informal claim, a plaintiff must show "that the IRS knew of the facts underlying the claim and understood that a claim was being based on them." *Silberman,* 40 Fed.Cl. at 904 (quoting *Levitsky v. United States,* 27 Fed.Cl. 235, 241 (1992)). In other words, the plaintiff bears the burden to notify the IRS of his or her intentions with respect to the facts on which the claim is based. *Id.* The informal claim must " 'put the Commissioner on notice that a right is being asserted with respect to an overpayment of tax.' " *Furst v. United States,* 230 Ct.Cl. 375, 678 F.2d 147, 151 (1982) (quoting *Newton v. United States,* 143 Ct.Cl. 293, 163 F.Supp. 614, 618 (1958)); *Wertz,* 51 Fed.Cl. at 447.

■ Here, to show that she lodged a timely informal refund claim, Ms. Minehan alleges that, on January 29, 1999, she visited the local IRS office in Wheaton, Maryland, and inquired about the viability of her refund claim after the applicable filing deadline. *See* Pl.'s Mot. to Request a Statutory Waiver of Sovereign Immunity at 2; *see also* Pl.'s Resp. to Def.'s Mot. of the United States to Dismiss the Complaint and Request for Oral Argument. Ms. Minehan does not claim, however, that she provided any written correspondence to the IRS on that date, or at any other time before the statute of limita-

tions had run. Faced with this difficulty, plaintiff cites this court's opinion in *Stelco Holding* to argue that "[t]here are no hard and fast rules for determining the sufficiency of an informal claim. . . ." Pl.'s Resp. to Def.'s Mot. of the United States to Dismiss the Complaint and Request for Oral Argument at 2 (quoting *Stelco Holding,* 42 Fed.Cl. at 109 (internal quotations omitted)). That contention is only correct, however, insofar as it relates to requirements other than the rule that all informal refund claims must include a writing. Indeed, the decision in *Stelco Holding,* like the others from this court, stated explicitly that "the one indispensable element of an informal claim for refund is a written component." *Stelco Holding,* 42 Fed.Cl. at 109 (internal quotations omitted).

Plaintiff also relies on *United States v. Commercial National Bank of Peoria,* 874 F.2d 1165 (7th Cir.1989). In that case, however, the United States Court of Appeals for the Seventh Circuit commented that "[v]irtually all courts agree that a taxpayer cannot rely solely upon oral communications to preserve his right to a refund claim." *Id.* at 1171. The Seventh Circuit's opinion also observes that courts "generally" agree that informal refund claims must include a written component. *See id.* at 1172. Plaintiff's effort to establish an exception to the writing requirement as a result of that phraseology is, however, untenable. In *Commercial National Bank,* the parties agreed that an informal written document had been submitted to the IRS in advance of the tax refund deadline. *See id.* For that reason, the court did not consider whether a valid informal claim could be made absent a writing. The decision thus does not support Ms. Minehan's proposition that she lodged a valid informal claim merely by speaking with an IRS employee.

Because plaintiff has not alleged that she submitted a writing to the IRS in advance of the deadline created by IRC § 6511, her attempt to avoid the statute of limitations by relying on the informal claim doctrine fails. *See Wertz,* 51 Fed.Cl. at 447; *Stelco Holding,* 42 Fed.Cl. at 109. Ms. Minehan has not satisfied the filing requirements which are prerequisite to suit in this forum, and the

court lacks subject matter jurisdiction to consider her tax refund request.

## B. Equitable Tolling

■ The United States argues next that, to the extent Ms. Minehan seeks equitable tolling of the statute of limitations which bars her refund claim, that request must be rejected. The government concedes that IRC § 6511 includes a limited number of exceptions to the period of limitation for tax refund claims.[8] Defendant argues, however, that plaintiff has alleged no facts that trigger any of the exceptions listed in § 6511. The United States argues further that there is no basis on which to equitably bar the government from raising a period of limitation defense to this suit. Defendant disagrees with Ms. Minehan's claim that the government should be estopped from relying on the filing deadline because of DOL's slow processing of her workers' compensation claim and its purported contribution to her failure to meet the statute's filing deadline. Def.'s Mot. at 11. The United States also disputes plaintiff's contention that the IRS improperly failed to inform her about her right to protect her potential refund by filing a protective claim during the pendency of her workers' compensation appeal.[9] To show that equitable relief would be improper, the government cites the Supreme Court's decision in *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). Defendant points out that, in *Brockamp*, the Supreme Court held

explicitly that "Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." Def.'s Mot. at 12 (quoting *Brockamp*, 519 U.S. at 352, 117 S.Ct. 849).

Defendant is undoubtedly correct that the applicable precedents bar equitable tolling of the statute of limitations set forth in IRC § 6511. The Supreme Court has stated clearly that no such tolling is permitted. *Brockamp*, 519 U.S. at 348, 117 S.Ct. 849 ("Can courts toll, for nonstatutory equitable reasons, the statutory time ... limitations for filing tax refund claims set forth in § 6511 of the Internal Revenue Code of 1986? We hold that they cannot."). Further, this court and others have held repeatedly that, under the reasoning of *Brockamp*, § 6511(a)'s filing deadline may not be equitably tolled.[10] *See Wadlington v. United States*, 68 Fed.Cl. 145 (2005); *Sullivan v. United States*, 46 Fed.Cl. 480 (2000) (holding that *Brockamp's* bar on equitable tolling of § 6511's filing deadline blocked an untimely refund claim filed by a plaintiff in response to the Veterans Administration's award of nontaxable disability benefits retroactive to eight years before its decision); *Brummett v. United States*, 218 F.Supp.2d 1253, 1258–59 (D.Or.2002) (holding that, under *Brockamp*, no equitable tolling of the filing deadline set

---

8. The statute allows, for example, special limitations periods for bad debts and worthless securities, net operating losses and capital loss carrybacks, foreign tax credits, credit carrybacks, some self-employment taxes, and income recaptured under qualified plan terminations. *See* 26 U.S.C. § 6511(d)(1–7) (2000). Section 6511 also permits tolling of the statute of limitation in situations in which taxpayers are unable to manage their finances due to disability. *Id.* § 6511(h).

9. The United States argues that, although plaintiff has characterized her argument in this regard as a claim for money damages, it is essentially an additional request that the court equitably bar the government from relying on § 6511's limitations provisions. *See* Def.'s Mot. at

10. In *United States v. Brockamp*, the Supreme Court held that IRC § 6511 was not subject to equitable tolling. 519 U.S. 347, 348–49, 117

S.Ct. 849, 136 L.Ed.2d 818 (1997). In response to that decision, Congress amended the law, to permit tolling in some circumstances. *John Doe 1 and John Doe 2 v. KPMG, LLP*, 398 F.3d 686, 689 (5th Cir.2005). That amendment, however, reinforces rather than undermines the holding of *Brockamp*. As the United States Court of Appeals for the Fifth Circuit recently explained,

> Congress's decision to specify further exceptions to the statute of limitations—without adding a general equitable tolling provision—further justifies the Supreme Court's reading of the statute in *Brockamp*. Because Congress prefers to provide explicit tolling exceptions to the limitations periods contained in federal tax law, by implication, it does not intend courts to invoke equitable tolling to alter the plain text of the statutes at issue.

*John Doe 1 and John Doe 2*, 398 F.3d at 689.

forth in § 6511 was permitted in a case in which a plaintiff had been awarded retroactive workers' compensation benefits by the DOL); *see also John Doe 1 and John Doe 2 v. KPMG, LLP,* 398 F.3d 686, 689 (5th Cir. 2005). In light of these decisions, it is clear that no equitable extension of § 6511(a)'s deadline in Ms. Minehan's favor is permitted. Plaintiff's income tax refund claim is time-barred, and the court cannot, in equity, excuse that fact.[11]

Furthermore, the sound public policy considerations which underlie the federal taxation system reinforce the appropriateness of the statute of limitations which applies here. As this court explained in *Sullivan,* a contrary interpretation of the Code's timeliness deadlines would allow "taxpayers who disagree with and appeal" administrative decisions related to disability or other payments to "avoid payment of taxes while waiting for an adjustment of their [status], creating a deferral neither intended nor provided by Congress in the tax code." *Sullivan,* 46 Fed.Cl. at 488; *see also Rothensies v. Elec. Storage Battery Co.,* 329 U.S. 296, 301, 67 S.Ct. 271, 91 L.Ed. 296 (1946) (stating that "a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy"); *Computervision,* 445 F.3d at 1363 ("The requirement for filing a proper refund claim is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination."). Here, there is no question that Ms.

Minehan failed to file her tax refund claim in a manner compliant with the terms of the IRC. For that reason, plaintiff's claim must be dismissed.

## C. Alternate Bases for Jurisdiction

Ms. Minehan's recent filings acknowledge the government's position that her income tax refund claim is time-barred under 26 U.S.C. § 6511(a) and the Supreme Court's holding in *Brockamp.* Plaintiff has presented several alternative claims and arguments in an effort to show that jurisdiction in the Court of Federal Claims is appropriate, in the event that her refund claim is dismissed.

### 1. Tort Claim

■ Plaintiff first hopes to pursue a claim for money damages under the Tucker Act. Ms. Minehan points out, correctly, that the Tucker Act creates jurisdiction in the Court of Federal Claims for actions against the United States which are based on "any regulation of an executive department." Pl.'s Resp. to Def.'s Resp. to Pl.'s Mot. to Request a Statutory Waiver of Sovereign Immunity (Pl.'s Reply) at 1 (quoting 28 U.S.C. § 1491(a)). Plaintiff contends that, here, she is entitled to recover based on a regulation promulgated by the IRS, which is a branch of the Department of the Treasury, and that the Treasury is an "Executive Department of the United States Government." Pl.'s Reply at 1–2. In making that argument, plaintiff points to IRS Publication 17, Your Federal Income Tax for Individuals, which she claims "has been extracted from the Internal Reve-

---

11. The government has presented extensive arguments to show that, even if equitable estoppel were permitted in tax refund cases, an equitable extension would not be appropriate on the facts of this particular case. *See* Def.'s Mot. at 14 *et seq.* Because the law is clear that no equitable estoppel is permitted under any circumstances, an extensive examination of those alternative arguments is not necessary. *See and compare RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1463 (Fed.Cir.1998) (stating that "since there clearly is no equitable exception in the statute, it is not necessary to decide if equitable estoppel would be enforced against the United States if an equitable exception were found in a tax refund statute of limitations"). Defendant is correct to point out, however, that "[a] party seeking to assert equitable estoppel against the

government bears an extraordinarily high burden and must, at a minimum, show 'affirmative misconduct.' " *Wertz v. United States,* 51 Fed. Cl. 443, 450 (2002) (quoting *Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir.1989)). Plaintiff has alleged no such affirmative misconduct on the part of the IRS or its employees. To be sure, the government's allegedly dilatory processing of Ms. Minehan's workers' compensation claim and its purported failure to advise taxpayers of the intricacies of federal income tax laws do not rise to the level of affirmative misconduct. *See id.* (citing *Mukherjee v. I.N.S.,* 793 F.2d 1006, 1009 (9th Cir.1986) (in turn holding that a false statement did not constitute affirmative misconduct absent a showing of a "deliberate lie ... or a pattern of false promises")).

nue Code via IRS interpretation; therefore, it is regulatory." *Id.* at 2. Plaintiff relies, specifically, on the Publication's inside cover, which states as follows:

> This publication covers some subjects on which a court may have made a decision more favorable to taxpayers than the interpretation by the IRS. Until these differing interpretations are resolved by higher court decisions or in some other way, this publication will continue to present the interpretation by the IRS.

Pl.'s Reply at 3 (quoting IRS Publication 17).

Plaintiff recognizes that, in addition to relying on one of the Tucker Act's bases for jurisdiction, she must establish that her claim is one for money. To that end, Ms. Minehan argues that the IRS violated the policy embodied in Publication 17 when it failed to include information regarding protective claims in its literature for taxpayers, and that she is entitled to damages as a result of that violation. Plaintiff contends that the issue disputed here (that being the validity of protective claims) has, in fact, been resolved by the highest court in the United States. In support, plaintiff cites the Supreme Court's decision in *United States v. Kales*, 314 U.S. 186, 195, 62 S.Ct. 214, 86 L.Ed. 132 (1941), in which the Court recognized the validity of informal refund claims. Pl.'s Reply at 3–4. Ms. Minehan argues that "the IRS was unfair and lacking in integrity when it failed to consider the *Kales* Court decision which was monetarily *favorable to the taxpayers;* rather, the IRS decided to maintain its own interpretation which was monetarily *favorable to the Federal government.*" *Id.* at 5 (emphasis in original). It appears that, through these allegations, plaintiff hopes to purse a claim of fraud or bad faith against the government.

The court is not unsympathetic to plaintiff's belief that she is entitled to compensation for the difficulties she has encountered in dealing with the IRS. However, it is beyond dispute that the Court of Federal Claims has no jurisdiction over claims which lie in tort.[12] 28 U.S.C. § 1491(a)(1); *Cottrell*

*v. United States*, 42 Fed.Cl. 144, 149 (1998) (stating that "[t]he Court of Federal Claims lacks jurisdiction over any and every kind of tort claim"); *see also Berdick v. United States*, 222 Ct.Cl. 94, 612 F.2d 533, 536 (1979); *McCauley v. United States*, 38 Fed. Cl. 250, 265 (1997) (holding that the court has no jurisdiction over claims for negligent or other wrongful conduct, or for breach of duty). Indeed, the Tucker Act itself explicitly limits its jurisdiction to those claims "not sounding in tort." 28 U.S.C. § 1491(a)(1). Thus, this court is without authority to consider a request for such damages. *See and compare Brown v. United States*, 105 F.3d 621, 622–23 (Fed.Cir.1997). This is true despite the fact that the amended complaint is somewhat ambiguous regarding Ms. Minehan's intent to pursue a tort claim. The law is clear that, even when a plaintiff characterizes a claim in terms which may fall outside the strict confines of tort law, the claim should be dismissed if it is, in essence, tort-based. *See Brown*, 105 F.3d at 623. In addition, the law is clear that allegations regarding bad faith or fraudulent actions by government officials or agencies do sound in tort. *See Franklin Savings Corp. v. United States*, 56 Fed.Cl. 720, 731 (2003) (stating that "to the extent that Franklin alleges the appointment of the conservator was made in bad faith, those claims were ones sounding in tort over which this court has no jurisdiction"); *Richards v. United States*, 20 Cl.Ct. 753, 758 (1990) (stating that "plaintiff's Complaint suggests that the District Court and other government employees acted fraudulently and in bad faith in their dealings with him … such claims sound in tort and as such also are clearly outside the jurisdiction of the United States Claims Court").

Further, previous opinions from this court make it clear that a plaintiff may not rescue an untimely refund request simply by recharacterizing it as a tort claim. In fact, this is not the first instance in which the Court of Federal Claims has encountered artful pleading by a claimant in an attempt to avoid the statute of limitations set forth in 26 U.S.C.

---

12. In addition, there is no evidence that IRS Publication 17 is indeed a regulation which cre- ates a private cause of action for money.

§ 6511(a). In *Sullivan*, two plaintiffs argued that an untimely refund claim, which came about as a result of a retroactive benefits award by the Department of Veterans Affairs, was not actually a refund claim, but instead a claim intended to " 'fully effectuate' the administrative grant of increased disability compensation" from the agency. 46 Fed. Cl. at 486. The plaintiffs alleged that their lawsuit sought "to acquire the full benefit of the entitlement awarded under Title 38 of the United States Code to plaintiff ... by the Department of Veterans Affairs," or "to claim full effectuation of pecuniary benefits." *Id.* at 486 (internal quotations omitted). The court rejected those contentions, explaining that the plaintiffs' attempt to characterize their claims as other than a tax refund suit did not permit them to "evade the effect of the clear and applicable statute of limitations contained in 26 U.S.C.A. § 6511(a)." *Id.* Under the persuasive reasoning of *Sullivan*, it is clear that despite Ms. Minehan's attempt to create a tort or damages claim based on the facts presented here, she has essentially reasserted an untimely refund request. Artful pleading will not permit Ms. Minehan to avoid the statute of limitations set forth in the Code. For these reasons, this court lacks subject matter jurisdiction to consider plaintiff's damages claim, and the claim must be dismissed.

### 2. Contract Claim

Plaintiff also argues that she may pursue a claim for money based on a quasi-contract between the United States and America's taxpayers. In support of that contention, Ms. Minehan relies on the IRS' mission statement to "[p]rovide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all." Pl.'s Reply at 4. Plaintiff asks the court to infer a contractual relationship between herself and the government as a result of that language, and to rely on that relationship as a means to remedy a situation in which the United States will be unjustly enriched if not required to compensate her. *Id.* at 5.

It is well-settled that a quasi-contract, or a contract implied-in-fact, is one which is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Lewis v. United States*, 70 F.3d 597, 600 (Fed.Cir.1995) (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). As with express contracts, an implied-in-fact contract typically requires (1) mutuality of intent to contract; (2) consideration; and (3) a lack of ambiguity in offer and acceptance. *Id.*; *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990), *cert. denied*, 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). In addition, when the United States is a party to an alleged contract implied-in-fact, the government representative "whose conduct is relied upon must have actual authority to bind the government in contract." *Id.* (quoting *City of El Centro*, 922 F.2d at 820); *see Baker v. United States*, 50 Fed.Cl. 483, 489 (2001).

Here, in the court's view, plaintiff's allegations regarding a quasi-contract with the government are insufficient even to survive a motion to dismiss. It is clear that Ms. Minehan has failed to allege adequate facts regarding the first and third elements of a contract implied-in-fact. The language on which plaintiff relies, which is found in a widely distributed IRS publication, does not evince a clear intent to contract on the part of the federal government, nor is it unambiguous in its purported character as an offer to create a contractual relationship. *See Lewis*, 70 F.3d at 600. To the contrary, the IRS's mission statement is aspirational, and it makes no specific promise or offer which could be deemed the basis for a contract. That fact is critical, as there is no question that a mere expression of intention does not constitute an offer which is sufficient to create a contractual relationship. *See Fed. Group, Inc. v. United States*, 67 Fed.Cl. 87, 104 (2005); *Estate of Bogley v. United States*, 206 Ct.Cl. 695, 514 F.2d 1027, 1032 (1975) (both stating that "[a]n expression of intention is not an offer"); *see also Cutler–Hammer, Inc. v. United States*, 194 Ct.Cl.

788, 441 F.2d 1179, 1182 (1971) (stating that "[i]n general, the obligation of the Government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention"). In other words, "[a] gratuitous and unsolicited statement of policy or intention which receives the concurrence of the party to whom it is addressed, does not constitute a contract." *Bogley,* 514 F.2d at 1033 (quoting *Beverage Distribs., Inc. v. Olympia Brewing Co.,* 440 F.2d 21, 29 (9th Cir.), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971)); *see also Baker,* 50 Fed.Cl. at 493 (explaining that "where a plaintiff claims a contractual obligation on the part of the Government stemming solely from a statute or regulation, the requirements of mutuality of intent to contract and lack of ambiguity require that the statute or regulation make an explicit promise—sufficient to justify another person in understanding that his assent to that bargain will conclude it and sufficient for the courts to determine the existence of a breach and give an appropriate remedy").

The insufficiency of Ms. Minehan's allegations in this regard is obvious when the facts as alleged are viewed in light of *Barseback Kraft AB v. United States,* 121 F.3d 1475, 1481 (Fed.Cir.1997). In that case, the Federal Circuit examined two phrases: "DOE intends to serve as a reliable long-term supplier of uranium enrichment services at predictable prices while providing the most competitive prices possible through technological innovation" and "DOE desires to operate the enrichment complex on a sound business basis without Government subsidy." *Id.* Addressing an argument that the government was bound by those statements, the court held that the statements did not create legal obligations because "facially these clauses express only desires, not binding commitments." *Id.; see also Federal Group,* 67 Fed.Cl. at 104. Here, as in *Barseback,* Ms. Minehan bases her contract claim on a general statement of intent only. While the cited language expresses a desire by the IRS to treat taxpayers with fairness and efficiency, it does not evoke a binding commitment on the part of the government. Plaintiff's attempt to base a quasi-contract claim on that language undoubtedly fails.

Further, it is significant to note that this court has already considered and rejected a similar contention that language contained in an IRS publication could be sufficient to create a quasi-contract. In *Girling Health Systems, Inc. v. United States,* 22 Cl.Ct. 66 (1990), a plaintiff corporation filed a breach of contract suit based on language in an IRS Form. The form, which addressed the manner in which companies could file elections to change their tax status, stated that

> IRS will notify you if your election is accepted and when it will take effect. You should generally receive determination on your election within 60 days after you have filed Form 2553.... If you are not notified of acceptance or non-acceptance of your election within 3 months of the date of filing (date mailed), you should take follow-up action by corresponding with the service center where the election was filed.

22 Cl.Ct. at 68. The plaintiff, Girling Health, argued that this language had created a contract between itself and the IRS, wherein the agency had promised to notify the company of the acceptance or rejection of its election within sixty days of filing. *Id.* at 69. The company claimed further that it had accepted the government's offer, by submitting an application to change its election, and that the government had breached the contract by failing to notify Girling Health of its status until more than a year later. The plaintiff claimed that this breach had prevented it from timely altering its tax status, which led to increased tax liability. The company requested money damages as compensation for the breach.

The court rejected Girling's Health's theory of recovery. Examining the specific language at issue, the court agreed with the government that the use of the word "generally" in the phrase "[y]ou should generally receive determination on your election within 60 days" rendered the phrase too nonspecific to create a contractual relationship. *Id.* at 69–70. Further, the instruction to the applicant to follow up with the IRS if no notification was received was additional evidence that the IRS had made no specific promise regarding the timing of its response. *Id.* at

70. The court held that "the statement upon which plaintiff relies is not a definite promise and thus, as a matter of law, there is no mutual assent." *Id.* In addition, the court noted that the plaintiff had made no allegations regarding any personal interaction with an IRS official which could form the basis for a contractual relationship. *Id.*

When a comparison is drawn between the facts in *Girling Health* and those presented here, it is clear that the court cannot infer a contractual relationship from the wording of the IRS' mission statement. *Id.* Indeed, the language cited is even more ambiguous than that reviewed in *Girling Health,* because here, the government has not promised to perform any specific act, but instead, has only stated a general policy goal. In the court's view, there is no question that this statement, which is set forth in a general publication and which calls for no specific response by a plaintiff taxpayer, does not demonstrate a clear intent to contract on the part of the government.[13] Because no mutual assent has been established, the language of the IRS' mission statement cannot serve as the basis for a finding that plaintiff entered into a quasi-contract with the government. And, as in *Girling Health,* plaintiff has alleged no interaction with a government employee from which an intent to contract may be inferred. *See id.* at 70. For all of these reasons, Ms. Minehan's quasi-contract claim fails, and it must be dismissed.

### 3. Statutory Waiver of Sovereign Immunity

■ Finally, plaintiff asks the court to grant to her a "Statutory Waiver of Sovereign Immunity," which she contends will provide her with "consent to sue the United States." *See* Pl.'s Mot. to Request a Statutory Waiver of Sovereign Immunity at 6. Plaintiff has filed a similar request with the IRS' Office of Chief Counsel. *See* Pl.'s Mot. for Leave to File an Out of Time Status Report

at 3. Ms. Minehan states that "[p]laintiff recognizes that until a Statutory Waiver of Sovereign Immunity is obtained, the merits of her case cannot be accepted by the Court." *Id.* In response to this request, the United States argues that the Court of Federal Claims cannot grant a statutory waiver of sovereign immunity, as that power lies solely with the United States Congress. Def.'s Resp. to Pl.'s Mot. to Request a Statutory Waiver of Sovereign Immunity at 3 (citing *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); 14 Charles Alan Wright, *et al., Federal Practice and Procedure* § 3654 (3d ed.1998)).

Defendant is undoubtedly correct that this court is not permitted to grant a waiver of sovereign immunity to plaintiff so that she may pursue a claim in this court. It is black letter law that, "[u]nder the doctrine of sovereign immunity the United States is immune from suit, unless it consents to be sued." *Confidential Informant v. United States,* 46 Fed.Cl. 1, 4 (2000) (citing *Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349; *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Further, there is no question that the power to grant such consent lies solely with the United States Congress, and that a "waiver of traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Sullivan,* 46 Fed.Cl. at 485 (quoting *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995)); *see also United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). Accordingly, Ms. Minehan's motion to request such a waiver must be denied.

The court appreciates the difficulty Ms. Minehan has encountered in pursuing this case, especially given her *pro se* status. Unfortunately, however, that difficulty does not blunt the impact of this court's jurisdictional restrictions. Plaintiff's tax refund claim is

---

13. It is also worth noting that, as with her putative tort claim, this contract claim is essentially an untimely tax refund claim. *See Girling Health Sys., Inc. v. United States,* 22 Cl.Ct. 66, 72 (1990) (citing *Diebold, Inc. v. United States,* 891 F.2d 1579 (Fed.Cir.1989), *cert denied,* 498 U.S. 823, 111 S.Ct. 73, 112 L.Ed.2d 47 (1990)) ("Basically,

plaintiff's damages claim is shaped by the tax benefits to which it claims entitlement. The claim is for the amount of money plaintiff had to or would have to pay as a result of the IRS' failure to consent to a change in accounting method. This type of claim has been treated as a tax refund suit.").

clearly time-barred. Further, under the Tucker Act, the Court of Federal Claims may not entertain Ms. Minehan's tort or contract claims against the United States. Nor may this court grant a waiver of sovereign immunity to plaintiff so that she may pursue those claims.

According to her most recent filings, Ms. Minehan has contacted her Congressional Representative to request a statutory waiver of sovereign immunity from the United States Congress. Plaintiff does, of course, retain the ability to pursue this matter with her representatives in the federal legislature, and that avenue may ultimately provide her with relief. In this court, however, there is no question that Ms. Minehan's claims must be dismissed. Defendant's motion is therefore granted.

## CONCLUSION

For the foregoing reasons, is it hereby **ORDERED** that

(1) Defendant's Motion of the United States to Dismiss the Complaint and Request for Oral Argument, filed April 3, 2006, is **GRANTED, in part,** with respect to the motion to dismiss and **DENIED, in part** as moot, with respect to the request for oral argument;

(2) Plaintiff's Motion To Request a Statutory Waiver of Sovereign Immunity, filed October 30, 2006, is **DENIED;**

(3) The Clerk's Office is directed to **ENTER** judgment in favor of the defendant **DISMISSING** this matter without prejudice; and

(4) Each party shall bear its own costs.